No. 23-60616

# In the
# United States Court of Appeals
# For the Fifth Circuit

STATE OF TEXAS; TEXAS COMMISSION ON
ENVIRONMENTAL QUALITY,
*PETITIONERS,*

V.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; MICHAEL S. REGAN,
ADMINISTRATOR OF THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,
*RESPONDENTS.*

**REPLY BRIEF OF PETITIONERS STATE OF TEXAS AND THE
TEXAS COMMISSION ON ENVIRONMENTAL QUALITY**

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil
Litigation

KELLIE E. BILLINGS-RAY
Chief, Environmental Protection
Division

May 20, 2024

ERIN K. SNODY
Assistant Attorney General
erin.snody@oag.texas.gov

JOHN R. HULME
Assistant Attorney General
john.hulme@oag.texas.gov

Office of the Attorney General
Environmental Protection Division
P.O. Box 12548, MC-066
Austin, Texas 78711-2548
Tel.: (512) 463-2012
Fax: (512) 320-0911

Counsel for State of Texas and Texas
Commission on Environmental Quality

Table of Authorities ............................................................. iii

Glossary of Acronyms and Abbreviations ............................... vii

Introduction .......................................................................... 1

Argument .............................................................................. 3

    I.     EPA should have approved Texas's SIP submittal under this Court's precedent in *LEAN*; its post-submittal change in statutory interpretation is not entitled to deference. ........................................... 3

          A.    EPA's post-submittal change in interpretation, as articulated in the Final Rule, is not entitled to deference. ................................................. 4

          B.    EPA deprived Texas of fair notice of the standards by which its SIP revisions would be judged. ................................................................. 9

    II.    Texas's challenge to EPA's Final Rule disapproving Texas's SIP revisions is not precluded by its prior participation in Sierra Club's general challenge to EPA's implementation rules. ...................................... 17

    III.   Vacatur is the proper remedy for the errors raised in Texas's petition for review. ....................................... 21

Conclusion ............................................................................ 24

Certificate of Service ............................................................. 26

Certificate of Compliance ...................................................... 27

Certificate of Electronic Compliance ...................................... 27

# TABLE OF AUTHORITIES

## Cases

*B & B Hardware, Inc. v. Hargis Indus., Inc.*,
   575 U.S. 138 (2015) ........................................................................ 17

*Bahr v. EPA*,
   836 F.3d 1218 (9th Cir. 2016) ....................................................... 19

*Cargill v. Garland*,
   57 F.4th 447 (5th Cir. 2023) (en banc) (plurality op.), *cert.*
   *granted*, 144 S. Ct. 374 (2023).................................................... 21

*Chevron, U.S.A., Inc. v. Nat. Res. Defense Council, Inc.*,
   467 U.S. 837 (1984).................................................................... 2

*Data Mktg. P'ship, LP v. U.S. Dep't of Labor*,
   45 F.4th 846 (5th Cir. 2022) ........................................................ 21

*Encino Motorcars, LLC v. Navarro*,
   579 U.S. 211 (2016) ..................................................................7, 8

*FCC v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009) ..................................................................7, 8

*Gonzales-Veliz v. Barr*,
   938 F.3d 219 (5th Cir. 2019).....................................................6, 7

*In re Bonvillian Marine Serv., Inc.*,
   19 F.4th 787 (5th Cir. 2021) .....................................................4, 20

*Inhance Techs., L.L.C. v. EPA*,
   96 F.4th 888 (5th Cir. 2024) ......................................10, 14, 15, 16

*Jacobs v. Nat'l Drug Intel. Ctr.*,
   548 F.3d 375 (5th Cir. 2008) ....................................................... 21

*La. Env't Action Network v. EPA*,
   382 F.3d 575 (5th Cir. 2004) (*LEAN*) ...................................2, 3, 9, 12

*Luminant Generation Co. v. EPA*,
    675 F.3d 917 (5th Cir. 2012) ............................................................. 6

*Midship Pipeline Co. v. FERC*,
    45 F.4th 867 (5th Cir. 2022) ............................................................. 9

*Nat'l Ass'n of Clean Air Agencies v. EPA*,
    489 F.3d 1221 (D.C. Cir. 2007) ....................................................... 2

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*,
    545 U.S. 967 (2005) ............................................................. 2, 6, 10

*Negusie v. Holder*,
    555 U.S. 511 (2009) ............................................................................5

*Petro-Hunt, L.L.C. v. United States*,
    365 F.3d 385 (5th Cir. 2004) ...................................................... 18, 20

*R.J. Reynolds Vapor Co. v. FDA*,
    65 F.4th 182 (5th Cir. 2023) ........................................................... 17

*Residents of Gordon Plaza, Inc. v. Cantrell*,
    25 F.4th 288 (5th Cir. 2022), *cert. denied*, 143 S. Ct. 100 (2022) ...................... 8

*Sierra Club v. EPA*,
    21 F.4th 815 (D.C. Cir. 2021) ................................................ 1, 13, 19

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944) .................................................................... 4, 8

*SoundExchange, Inc. v. Copyright Royalty Bd.*,
    904 F.3d 41 (D.C. Cir. 2018) ........................................................ 5, 6

*Tex. Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n*,
    989 F.3d 368 (5th Cir. 2021) ...................................................... 21, 22

*Texas v. EPA*,
    91 F.4th 280 (5th Cir. 2024) (*Texas 2024*).................................... 2, 5

*Texas v. United States,*
50 F.4th 498 (5th Cir. 2022) ........................................................... 21

*United States ex rel Gage v. Rolls-Royce N. Am., Inc.,*
760 F. App'x 314 (5th Cir. 2019) ................................................... 18

*United States v. Chrysler Corp.,*
158 F.3d 1350 (D.C. Cir. 1998) ...................................................... 16

*United Steel v. Mine Safety & Health Admin.,*
925 F.3d 1279 (D.C. Cir. 2019) ................................................ 21, 22

*Wages & White Lion Invs., L.L.C. v. FDA,*
90 F.4th 357 (5th Cir. 2024) ................................................... *passim*

**Statutes**

42 U.S.C. § 7410(a)(1) .................................................................... 12

42 U.S.C. § 7509(a) ........................................................................ 23

42 U.S.C. § 7607(b)(1) ................................................................... 19

**Other Authorities**

*Air Plan Approval; Texas; Reasonable Further Progress Plan for the Dallas-Fort Worth Ozone Nonattainment Area,*
85 Fed. Reg. 64,084 (Oct. 9, 2020) ................................................ 12

*Air Plan Approval; Texas; Reasonable Further Progress Plan for the Houston-Galveston-Brazoria Ozone Nonattainment Area,*
85 Fed. Reg. 60,928 (Sept. 29, 2020) ............................................. 12

*Air Plan Approval; Texas; Reasonable Further Progress Plan for the Houston-Galveston-Brazoria Ozone Nonattainment Area,*
86 Fed. Reg. 24,717 (May 10, 2021) .......................................... 13, 14

*Air Plan Disapproval; Texas; Contingency Measures for the Dallas-Fort Worth and Houston-Galveston-Brazoria Ozone Nonattainment Areas*,

88 Fed. Reg. 24,522 (Apr. 21, 2023) (C.I. 1)................................................15, 16

*Air Plan Disapproval; Texas; Contingency Measures for the Dallas-Fort Worth and Houston-Galveston-Brazoria Ozone Nonattainment Areas*,

88 Fed. Reg. 67,957 (Oct. 3, 2023) (Final Rule) (C.I. 8) ........................... *passim*

*Determinations of Attainment by the Attainment Date, Extensions of the Attainment Date, and Reclassification of Areas Classified as Serious for the 2008 Ozone National Ambient Air Quality Standards*,

87 Fed. Reg. 60,926 (Oct. 7, 2022).................................................................... 13

*Determinations of Attainment by the Attainment Date, Extensions of the Attainment Date, and Reclassification of Several Areas Classified as Moderate for the 2008 Ozone National Ambient Air Quality Standards*,

84 Fed. Reg. 44,238 (Aug. 23, 2019) ............................................................ 11, 13

*Implementation of the 2008 National Ambient Air Quality Standards for Ozone: State Implementation Plan Requirements*,

80 Fed. Reg. 12,264 (Mar. 6, 2015) ................................................................ 1, 3

## Glossary of Acronyms and Abbreviations

| CAA or Act | Clean Air Act, codified at 42 U.S.C. ch. 85 |
|---|---|
| DFW | Dallas-Fort Worth air quality control region |
| EPA | United States Environmental Protection Agency |
| Final Rule | *Air Plan Disapproval; Texas; Contingency Measures for the Dallas-Fort Worth and Houston-Galveston-Brazoria Ozone Nonattainment Areas*, 88 Fed. Reg. 67,957 (Oct. 3, 2023); C.I. 8 |
| HGB | Houston-Galveston-Brazoria air quality control region |
| NAAQS | National Ambient Air Quality Standards |
| Proposed Rule | *Air Plan Disapproval; Texas; Contingency Measures for the Dallas-Fort Worth and Houston-Galveston-Brazoria Ozone Nonattainment Areas*, 88 Fed. Reg. 24,522 (Apr. 21, 2023); C.I. 1 |
| SIP | State Implementation Plan |
| TCEQ | Texas Commission on Environmental Quality |

## INTRODUCTION

In its Final Rule, EPA disapproved Texas's timely-submitted revisions to its State Implementation Plan (SIP) addressing contingency measures for the Dallas-Fort Worth (DFW) and Houston-Galveston-Brazoria (HGB) Serious ozone nonattainment areas for the 2008 ozone National Ambient Air Quality Standards (NAAQS) using a standard that had not been articulated by the agency at the time Texas's revisions were due and submitted. C.I. 8. The only justification given for the agency's post-submittal change in standard was that the D.C. Circuit issued its intervening opinion in *Sierra Club*[1]—an action challenging EPA's rules implementing the 2015 ozone NAAQS[2]—that invalidated EPA's long-standing interpretation of the Clean Air Act's contingency measures requirement to allow States to rely on future, surplus emissions reductions from already-implemented

---

[1] *Sierra Club v. EPA*, 21 F.4th 815 (D.C. Cir. 2021).

[2] As the Amici note, *Sierra Club* involved a challenge to EPA's implementation rules for the 2015 ozone NAAQS, whereas Texas's SIP submittal in this case involves the 2008 ozone NAAQS. Am. Br. 16-17. EPA enacted separate implementation rules for the 2008 ozone NAAQS. *Implementation of the 2008 National Ambient Air Quality Standards for Ozone: State Implementation Plan Requirements*, 80 Fed. Reg. 12,264, 12,285 (Mar. 6, 2015). Those rules confirmed EPA's continued adherence to its longstanding policy of allowing "federal measures providing ongoing reductions into the future to be used [to] meet contingency measure requirements for the 2008 ozone NAAQS." *Id.* It is not clear from the Court's opinion in *Sierra Club* what effect, if any, the contingency measure ruling for the 2015 ozone NAAQS had on EPA's implementation of the 2008 ozone NAAQS. *Sierra Club*, 21 F.4th at 818 (noting that the D.C. Circuit had previously "resolved all but one of th[e] challenges" to the implementation rules for the 2008 ozone NAAQS in prior cases and the "2018 Implementation Rule [of the 2015 ozone NAAQS] is the focus of this case"). Nor did EPA address this question in its Final Rule here. C.I. 8 at 67,957.

measures. C.I. 8. Not only did EPA's disapproval action deprive Texas of fair notice of the standards by which its SIP submittal would be judged, it also disregarded Fifth Circuit precedent interpreting the Act to allow the very measures Texas submitted. *La. Env't Action Network v. EPA*, 382 F.3d 575, 584 (5th Cir. 2004) (*LEAN*).[3]

Recognizing this tension, EPA now argues for deference for its change in statutory interpretation under *Chevron*[4] and *Brand X*.[5] But deference principles do not apply where, as here, the agency's Final Rule reflects that the agency did not engage in a genuine exercise of statutory interpretation, but rather applied caselaw that the agency believed left no room for interpretation. *See Texas v. EPA*, 91 F.4th 280, 300 (5th Cir. 2024) (*Texas 2024*). In any case, EPA's deference arguments cannot overcome the lack of fair notice to Texas or the Final Rule's disregard for

---

[3] EPA argues that Texas's comments on the proposed disapproval did not specifically state that *LEAN* should control, Resp. Br. 25 n.9, or that *LEAN* still applies, Resp. Br. 26 n.10, so Texas has waived those arguments. Although Texas's comments did not specifically identify *LEAN* by name, the comments stated that EPA should have finalized action on Texas's May 2020 SIP submittals "based on *the established requirements* and statutory interpretation that applied" when Texas's SIP revisions were due and submitted. C.I. 7 at 3 (emphasis added). The "established requirements" necessarily includes applicable caselaw, which, in the Fifth Circuit, includes *LEAN*. Similarly, Texas argued that "EPA's prior interpretation of the contingency measure requirement allowing existing control measures that obtain future emission reductions was both appropriate and in keeping with the FCAA's mandate for future emission reductions to assist in attainment efforts." C.I. 7 at 2. This is the interpretation upheld by this Court in *LEAN*. Texas's comments were "prominent and clear enough to place the agency 'on notice'" of Texas's arguments. *Texas v. EPA*, 91 F.4th 280, 299 (5th Cir. 2024) (quoting *Nat'l Ass'n of Clean Air Agencies v. EPA*, 489 F.3d 1221, 1231 (D.C. Cir. 2007)). Accordingly, those arguments were not waived. *Id.*

[4] *Chevron, U.S.A., Inc. v. Nat. Res. Defense Council, Inc.*, 467 U.S. 837 (1984).

[5] *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005).

Texas's legitimate reliance interests on EPA's prior interpretation. EPA's application of the *Sierra Club* standard to disapprove Texas's contingency measures was arbitrary, unreasonable, and an abuse of discretion, and the Final Rule should be vacated.

ARGUMENT

I.  **EPA should have approved Texas's SIP submittal under this Court's precedent in *LEAN*; its post-submittal change in statutory interpretation is not entitled to deference.**

Texas prepared and submitted its SIP revisions in May 2020 in accordance with long-standing EPA policy and Fifth Circuit precedent allowing States to rely on future, surplus emissions reductions from already implemented measures to satisfy the Clean Air Act's ("Act") contingency measure requirement. *LEAN*, 382 F.3d 575, 584 (5th Cir. 2004) ("[W]e find the EPA's argument persuasive, that the early activation of continuing contingency measures is consistent with the purpose and requirements of the CAA statute."); 80 Fed. Reg. 12,264, 12,285 (Mar. 6, 2015) (confirming EPA's longstanding policy of allowing the use of future surplus emission reductions from already implemented federal measures to satisfy the contingency measure requirement for the 2008 ozone NAAQS). Despite acknowledging Texas's compliance with the applicable standards, EPA disapproved Texas's contingency measures SIP submittal based solely on the D.C. Circuit's intervening opinion in

*Sierra Club*. C.I. 8 at 67,960. But the D.C. Circuit's opinion did not—and cannot—overrule this Court's precedent in *LEAN*. *In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 792 (5th Cir. 2021). Recognizing this conundrum, EPA now argues for *Chevron* deference or, at minimum, *Skidmore*[6] deference for its change in interpretation of the Act's contingency measure requirements. Resp. Br. 20-27. For the reasons set forth in Amici's brief, and the additional reasons below, EPA's Final Rule is not entitled to deference. EPA's failure to follow—or even acknowledge[7]—applicable Fifth Circuit precedent in disapproving Texas's SIP revisions warrants vacatur of the Final Rule.

### A. EPA's post-submittal change in interpretation, as articulated in the Final Rule, is not entitled to deference.

To be entitled to *Chevron* deference, EPA had to engage "in the kind of interpretive exercise to which review under *Chevron* generally applies—*i.e.*, interpreting a statute it is charged with administering in a manner (and through a process) evincing an exercise of its lawmaking authority." *SoundExchange, Inc. v.*

---

[6] *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).

[7] EPA claims that it did not address *LEAN* in its Final Rule because Texas did not specifically note *LEAN* in its comments. Resp. Br. 25 n.9. But Texas's comments specifically argued that EPA should follow "the established requirements" at the time Texas submitted its SIP revisions. C.I. 7 at 3. This includes *LEAN*. EPA cannot escape its obligation to consider all relevant caselaw simply because a commenter does not specifically mention it by name. Indeed, EPA's Final Rule expressly acknowledges that its actions "must comport with applicable caselaw" when referencing the D.C. Circuit's decision in *Sierra Club*. C.I. 8 at 67,959. Yet, EPA's Final Rule includes no mention of *LEAN*.

*Copyright Royalty Bd.*, 904 F.3d 41, 54 (D.C. Cir. 2018). EPA did not do so here. In the Final Rule, EPA notes that "it was not possible for EPA to proceed with an approval [of Texas's contingency measures] after the D.C. Circuit's decision in *Sierra Club.*" C.I. 8 at 67,960. It further explained that "[t]he SIP submissions at issue in this action were still pending before the Agency when the D.C. Circuit issued the relevant court decision, and EPA must now take action consistent with that decision." *Id.* In other words, the Final Rule indicates that the agency believed its hands were tied and it had no choice but to follow the D.C. Circuit's interpretation of the Act. "Where a statute grants an agency discretion[,] but the agency erroneously believes it is bound to a specific decision, [the Court] cannot uphold the result as an exercise of the discretion that the agency disavows . . . ." *Texas 2024*, 91 F.4th at 300 (citation omitted). In that case, "the regulation must be declared invalid, even though the agency might be able to adopt the regulation in the exercise of its discretion," *id.* (citation omitted), because "that error prevent[s] [the agency] from a full consideration of the statutory question . . . presented." *Id.* (quoting *Negusie v. Holder*, 555 U.S. 511, 521 (2009)).

Perhaps recognizing this flaw, EPA points to a single sentence in the Final Rule as its "reasoned, albeit brief, explanation," Resp. Br. 25, in support of its change in statutory interpretation: "[EPA] now agrees that the plain language of

section 172(c)(9) and section 182(c)(9) require that contingency measures be both conditional and prospective." C.I. 8 at 67,958. This is far from the type of "interpretive exercise" required of an agency to invoke *Chevron* deference. *SoundExchange,* 904 F.3d at 54. Nor is it enough to overcome the overwhelming language in the Final Rule indicating that EPA merely applied the D.C. Circuit's opinion in *Sierra Club* without engaging in any real exercise of statutory interpretation or any analysis of the relationship between *Sierra Club* and *LEAN* in evaluating SIP submittals in the Fifth Circuit. Even EPA's briefing before this Court seems to contradict itself, simultaneously arguing for deference (*i.e.,* the statute is ambiguous and EPA made a valid change in statutory interpretation), Resp. Br. 20, and also that EPA was legally bound to follow *Sierra Club*'s reading of the unambiguous statutory language across the nation (*i.e.,* EPA had no discretion to engage in statutory interpretation), Resp. Br. 35. This Court should reject EPA's post-hoc rationalization for its Final Rule. *Luminant Generation Co. v. EPA*, 675 F.3d 917, 925 (5th Cir. 2012).

EPA's arguments for deference of its changed interpretation under *Brand X* and *Gonzales-Veliz* are equally unavailing. Resp. Br. 20. While an agency is entitled to change its interpretation, it must "at least 'display awareness that it is changing position' and 'show that there are good reasons for the new policy.'" *Gonzales-Veliz*

*v. Barr*, 938 F.3d 219, 234 (5th Cir. 2019) (quoting *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016)). But "[i]n explaining its changed position, an agency must also be cognizant that longstanding policies may have 'engendered serious reliance interests that must be taken into account.'" *Encino Motorcars*, 579 U.S. at 221-22 (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)). EPA's Final Rule fails to show any cognizance of the reliance interests that Texas placed on its long-standing policy. *See* C.I. 8.

While EPA acknowledges that Texas submitted its contingency measures pursuant to its long-standing policy, C.I. 8 at 67,960, it provides no discussion or analysis of the consequences of its post-submittal change in interpretation on Texas's contingency measures or the State's long-term SIP planning. *See* Tex. Br. 35-38. Given the time-sensitive nature of contingency measures—and the significant agency resources involved in SIP planning and preparation—EPA's post-submittal change in interpretation was not harmless. *Id*. Yet the Final Rule does not "take[] into account" in any of Texas's reliance interests on EPA's prior policy. *Gonzales-Veliz*, 938 F.3d at 234. To the contrary, the Final Rule summarily dismisses Texas's legitimate concerns about the impropriety of applying the *Sierra Club* standard to Texas's pre-*Sierra Club* SIP submittal, particularly now that the attainment date (the event that that triggers the measures) has passed. C.I. 8 at 67,961. Where serious

reliance interests are involved, "a reasoned explanation is needed for disregarding facts and circumstances that underlay or were engendered by the prior policy." *Encino Motorcars*, 579 U.S. at 222 (quoting *Fox Television Stations*, 556 U.S. at 515-16). Because EPA failed to provide a reasoned explanation for its disapproval—both in terms of its change in statutory interpretation and the reliance interests on EPA's prior interpretation—the Final Rule is not entitled to *Chevron* deference. *Id.*

Nor is it entitled to *Skidmore* deference. Under *Skidmore*, agency interpretations are "entitled to respect insofar as they 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" *Residents of Gordon Plaza, Inc. v. Cantrell*, 25 F.4th 288, 298 (5th Cir. 2022), *cert. denied*, 143 S. Ct. 100 (2022) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). "The weight provided to the agency's interpretation 'will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.'" *Id.* Here, EPA argues for *Skidmore* deference (in the absence of *Chevron* deference) because it was purportedly "acting within its area of expertise when it administers the complexities of the CAA." Resp. Br. 27. But the Final Rule reflects no such exercise of agency expertise. To the contrary, the Final Rule demonstrates that EPA was merely applying the D.C.

Circuit's opinion in *Sierra Club* without any regard to the complexities of the Act or the impracticality of applying the forward-looking *Sierra Club* standard to post-attainment date scenarios. *See* C.I. 8 at 67,961; *see also* Tex. Br. 35-38. Due to the complete lack of analysis of the statutory requirements—particularly in the context of post-attainment date implementation of the required contingency measures— EPA's interpretation warrants no persuasive weight from this Court. *See Midship Pipeline Co. v. FERC*, 45 F.4th 867, 875 (5th Cir. 2022) (declining to afford *Skidmore* deference where the agency's order showed "a lack of 'thoroughness'" and a "dearth of explanatory reasoning").

EPA's Final Rule evinces no clear attempt to engage in a *Chevron*-worthy exercise of statutory interpretation. Instead, the Final Rule demonstrates that EPA simply applied the D.C. Circuit's opinion in *Sierra Club* to disapprove Texas's contingency measures in direct conflict with the Fifth Circuit's precedent in *LEAN*. But this Court's precedent in *LEAN* remains applicable and EPA should have approved Texas's SIP submittal under that standard.

**B.      EPA deprived Texas of fair notice of the standards by which its SIP revisions would be judged.**

Even if the Court were to find EPA's change in statutory interpretation to be worthy of deference under *Chevron* or *Skidmore*, the Final Rule should still be vacated because EPA's disapproval of Texas's SIP submittal using the new standard

violated the fundamental administrative law principle of fair notice. While agencies are entitled to change their interpretation of the statutory requirements (so long as it fully explains their justification for the change), *Brand X*, 545 U.S. at 981, they are still required to provide regulated entities with fair notice of the standards by which their conduct will be judged. *Inhance Techs., L.L.C. v. EPA*, 96 F.4th 888, 894 (5th Cir. 2024). ("It is well-established that administrative agencies must give the public fair notice of their rules before finding a violation of them."). "Even when an agency lawfully changes its position, it cannot fault a party for relying in good faith on the prior one." *Wages & White Lion Invs., L.L.C. v. FDA*, 90 F.4th 357, 384 (5th Cir. 2024). EPA did not abide by these principles here.

Texas timely submitted its contingency measure SIP revisions in May 2020, C.I. 2-4, in reliance on EPA's long-standing interpretation of the Act, as affirmed by this Court in *LEAN*. After the Texas Commission on Environmental Quality (TCEQ) complied with its statutory obligation to revise its SIP, EPA changed the applicable standard and disapproved Texas's contingency measures using a standard that had not been articulated by the agency at the time TCEQ submitted its revisions. C.I. 8 at 67,960 (disapproving Texas's submittal despite acknowledging that "TCEQ's development and timely May 13, 2020 submittal" was "consistent with past EPA approvals of already-implemented contingency measures."). EPA's

subsequent proposal to change its interpretation of the statutory requirements does not change the fact that Texas complied, in good faith, with the statutory requirements as articulated by EPA at the time Texas's SIP revisions were due and submitted.

EPA argues that it gave Texas fair notice of the applicable standards by announcing in a May 2021 rulemaking that it was delaying action on the contingency measure component of Texas's SIP submittal in light of the D.C. Circuit's opinion in *Sierra Club*. Resp. Br. 37. Intervenor similarly asserts that Texas was notified of the *Sierra Club* decision—the underlying basis for EPA's change in interpretation—in January 2021 because of its status as an intervenor in that case. Int. Br. 34. But neither of these actions gave Texas proper notice of the standard that EPA would eventually apply when Texas timely submitted its SIP revisions in May 2020. Nor did they provide Texas with notice and the opportunity to timely amend its SIP revisions with reasonable certainty of the standard that EPA would ultimately apply.

Timing is key here. Texas began preparing its SIP revisions in mid-2019 when the HGB and DFW areas were reclassified as Serious. *See* 84 Fed. Reg. 44,238 (Aug. 23, 2019) (reclassifying the HGB and DFW areas as Serious effective September 23, 2019); C.I. 2 at 1-12 (outlining public notice and comment process for Texas's proposed SIP revisions that occurred from September to October 2019). SIP

revisions of this nature require significant time and agency resources to prepare. By law, SIP revisions must include provisions that have been duly adopted by the state, following public notice and an opportunity to comment. 42 U.S.C. § 7410(a)(1). The state rulemaking process takes months to complete, adding additional time and steps to the already complex SIP preparation process. In this case, Texas prepared its SIP revisions in mid-2019 in compliance with the applicable standard, as articulated by EPA and applicable Fifth Circuit precedent. *LEAN*, 382 F.3d at 584. TCEQ then adopted the revisions on March 9, 2020, C.I. 2 at PDF 619,[8] and timely submitted them to EPA for approval on May 12, 2020, C.I. 2 at 1; C.I. 3 at 1. Throughout this entire SIP revision and submittal process, EPA maintained its prior interpretation of the contingency measure requirement. *See* 85 Fed. 60,928, 60,931 (Sept. 29, 2020) (proposed approval of Texas's contingency measures noting that "EPA has long interpreted the contingency measures provision to allow states to rely on measures already in place and implemented so long as those reductions are beyond those relied on for purposes of the attainment or RFP planning SIP"); 85 Fed. Reg. 64,084, 64,087 (Oct. 9, 2020) (confirming EPA's continued adherence to its long-standing policy).

---

[8] The cited page is unnumbered. This cite refers to the PDF page of the full document in the Certified Index. The excerpted page is included in the State of Texas Petitioners' Rule 30.2(a) Appendix at Tab 2, PDF page 13.

The D.C. Circuit did not issue its ruling in *Sierra Club* until January 2021. *Sierra Club*, 21 F.4th at 815. And while Texas had notice of that ruling as an intervenor, it was not imminently clear how EPA would (or even could) apply that ruling to Texas's pending contingency measure submission. Indeed, EPA did not take any action until May 2021, when it announced that it was "reexamining" Texas's pending submission in light of *Sierra Club*. 86 Fed. Reg. 24,717, 24,717 (May 10, 2021). Texas could not have known, based on this vague announcement, how EPA would ultimately assess Texas's SIP revisions. Moreover, this announcement came only months before the critical July 20, 2021 attainment date.[9] At that point, it would not have been possible for Texas to withdraw its pending SIP submittal and resubmit new revisions for approval before the attainment date. Nor did EPA instruct Texas do so. *Id.* (stating only that EPA was "reexamining the contingency measures portion of the TCEQ submission for the HGB area in light of the D.C. Circuit decision").

EPA and Intervenor make their fair notice arguments with the benefit of hindsight. Viewing these events through the lens of EPA's ultimate disapproval, they point to these events as forecasting EPA's clear intent *at the time* to adopt the *Sierra*

---

[9] The attainment date for the Houston-Galveston-Brazoria and Dallas-Fort-Worth ozone nonattainment areas' Serious classification was July 20, 2021. 84 Fed. Reg. 44,238, 44,244 (Aug. 23, 2019). The areas were subsequently reclassified as Severe, effective November 7, 2022. 87 Fed. Reg. 60,926, 60,926 (Oct. 7, 2022).

*Club* standard to disapprove Texas's pending SIP revisions. *See* Resp. Br. 36-37; Int. Br. 35-36. But EPA did not clearly articulate any intention to change the applicable standard in its May 2021 rulemaking. 86 Fed. Reg. at 24,717 (stating only that "the D.C. Circuit vacated EPA's interpretation of the CAA to allow states to rely on already implemented control measures to meet the statutory requirements of section 172(c)(9) or 182(c)(9) for contingency measures in nonattainment plans for the ozone NAAQS" but failing to announce EPA's position on the applicable standard). Nor did the May 2021 rulemaking provide any guidance to States with pending SIP submittals about how those submittals would be evaluated post-*Sierra Club. Id.* This is particularly relevant in the Fifth Circuit, where *LEAN* controls. Instead, Texas was left guessing as to what standard EPA would ultimately apply and how it would treat pending submittals with fast-approaching or past attainment dates. "[W]hile [parties] are required to stay apprised of laws and regulations, they are not required to predict an agency's actions with 'extraordinary intuition or with the aid of a psychic.'" *Inhance Techs.*, 96 F.4th at 894 (quoting *Wages*, 90 F.4th at 381).

Texas could not have known at the time *Sierra Club* was decided (or even when EPA announced it would reexamine Texas's contingency measures in light of *Sierra Club*) how EPA would apply the forward-looking *Sierra Club* standard to its pending SIP revisions, especially once the attainment date passed. EPA could have

plausibly read *Sierra Club*—as Texas argues here—to only require strictly prospective and conditional contingency measures for future SIP submittals where the attainment date has not yet passed. *See* Tex. Br. 32-38. EPA's suggestion that Texas should have known in May 2021 that EPA would apply *Sierra Club*'s forward-looking standard to disapprove Texas's SIP submittal after the triggering event had passed demands too much—"such foresight is 'more than the law requires.'" *Inhance*, 96 F.4th at 895 (quoting *Wages*, 90 F.4th at 376).

EPA's arguments that Texas was given fair notice through the formal rulemaking process when EPA published its proposed disapproval in April 2023 are equally unpersuasive. Resp. Br. 37. EPA's proposed disapproval did not come until three years after TCEQ timely submitted its SIP revisions.. C.I. 1 (proposing to disapprove Texas's May 2020 submittal on April 21, 2023). During that time, the attainment date (the triggering event for the measures) passed in July 2021. While the proposed rule announced that EPA intended to apply the *Sierra Club* standard to Texas's submittal, it provided no discussion or guidance about how the agency interpreted the new "prospective and conditional" requirement to apply in post-attainment date scenarios. C.I. 1. Any withdrawal and resubmittal by Texas at that stage would have been purely speculative as to what type of measures EPA might consider to be "prospective and conditional" given that the triggering event had

already occurred. Texas "might have satisfied [EPA] with the exercise of extraordinary intuition," but such a possibility is "more than the law requires." *Wages*, 90 F.4th at 381 (quoting *United States v. Chrysler Corp.*, 158 F.3d 1350, 1357 (D.C. Cir. 1998)).

In any case, a proposed rule is not a final agency action. Texas had the opportunity to comment and express its concerns to EPA before its disapproval was finalized. C.I. 1 at 24,522. Texas took advantage of the notice-and-comment process to engage with EPA regarding the post-submittal change in standard and the precarious position that Texas would face if EPA finalized the disapproval. C.I. 7. That EPA did not change its position based on Texas's comments does not render the process invalid—the possibility remained that EPA could have withdrawn its disapproval based on Texas's comments. Texas could hardly be required to withdraw and resubmit its SIP revisions simply because the agency announced in a *proposed* rule that it has made a post-submittal change in interpretation of the applicable requirements.

Texas relied in good faith on EPA's prior interpretation of the Act's contingency measure requirement and applicable Fifth Circuit caselaw in formulating its SIP revisions. *Inhance*, 96 F.4th at 895 ("federal agencies 'cannot "surprise" a party by penalizing it for "good-faith" reliance on the agency's prior

positions.'") (quoting *R.J. Reynolds Vapor Co. v. FDA*, 65 F.4th 182, 189 (5th Cir. 2023)). And while EPA acknowledged Texas's compliance with its prior interpretation of the contingency measure requirements, C.I. 8 at 67,960, EPA nonetheless disapproved Texas's SIP submittal based on a standard that had not been articulated by the agency at the time Texas's revisions were due and submitted. Because EPA's disapproval of Texas's contingency measure SIP revisions violates the fundamental administrative law principle of fair notice, the Final Rule should be vacated.

## II.    Texas's challenge to EPA's Final Rule disapproving Texas's SIP revisions is not precluded by its prior participation in Sierra Club's general challenge to EPA's implementation rules.

Texas's challenge to EPA's Final Rule goes beyond the issues litigated in *Sierra Club* to raise fact-dependent issues specific to EPA's actions *in this case*. Thus, the mere fact that Texas intervened in support of EPA in Sierra Club's general challenge to EPA's regulations implementing the 2015 ozone NAAQS does not preclude Texas's challenge to EPA's Final Rule disapproving Texas's SIP revisions for the 2008 ozone NAAQS.

Issue preclusion prevents the re-litigation of issues that have already been conclusively decided between the parties. *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148 (2015). A party may be precluded from "litigating an issue already

raised in an earlier action between the same parties only if: (1) the issue at stake is identical to the one involved in the earlier action; (2) the issue was actually litigated in the prior action; and (3) the determination of the issue in the prior action was a necessary part of the judgment in that action." *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 397 (5th Cir. 2004). Intervenors argue that because Texas intervened and participated in *Sierra Club*, Texas's petition for review of EPA's Final Rule disapproving Texas's pre-*Sierra Club* SIP revisions is precluded. Int. Br. 17. While it is true that Texas participated, albeit in a somewhat limited capacity, in Sierra Club's challenge to EPA's 2015 ozone NAAQS implementation rules, the general question of statutory interpretation decided in that case is not identical to the case-specific issues raised by Texas here. Texas's petition raises unique, fact-specific issues that were not—and could not have been litigated—in *Sierra Club. United States ex rel Gage v. Rolls-Royce N. Am., Inc.*, 760 F. App'x 314, 317 (5th Cir. 2019) (issue preclusion "does not prevent parties from relitigating an issue unless the facts and the legal standard used to assess them are the same in both proceedings").

In its first issue, Texas raises the question of whether EPA's disapproval of Texas's timely submitted SIP revisions based on a post-submittal change of the applicable requirements was unreasonable under the circumstances. Tex. Br. 23. This is inherently a fact-dependent inquiry specific to this case. The manner in which

EPA changed the applicable standard for approvable contingency measures, the timing of its actions, and the relationship between *LEAN* and *Sierra Club* in EPA's disapproval of Texas's SIP revisions are independent from the general questions of statutory interpretation addressed in *Sierra Club*. Texas is entitled to challenge EPA's actions in disapproving Texas's contingency measures under the particular circumstances of this case. 42 U.S.C. § 7607(b)(1).

Texas's petition also raises unique questions about whether EPA's interpretation of the statute to require wholly prospective and conditional contingency measures could reasonably be applied to Texas's SIP submittal *after* the applicable attainment date passed. Tex. Br. 32-35. *Sierra Club* does not answer—or even contemplate—the question of whether the Act requires strict compliance with the prospective and conditional reading of the contingency measure requirement once the triggering event has passed. *Sierra Club*, 21 F.4th at 828 (discussing the Act's contingency measure requirement in terms of future events). As discussed in Texas's opening brief, Tex. Br. 38, the court's textual reading of the statute in *Sierra Club* occurs in the context of timely submitted measures for a future attainment date. *Sierra Club*, 21 F.4th at 828 (citing the Ninth Circuit's finding in *Bahr v. EPA*, 836 F.3d 1218, 1235–36 (9th Cir. 2016) that contingency measures are "control measures that will be implemented in the future"). The issue of whether EPA correctly

interpreted the Act, in light of *Sierra Club*, to require the disapproval of Texas's timely submitted SIP revisions *after* the attainment date had passed is a new issue that was not raised in *Sierra Club*. Because Texas's petition raises "questions of law [that] are not 'identical' to the issues raised in [*Sierra Club*] and were not 'actually litigated' in [*Sierra Club*]," Texas "is not precluded, under collateral estoppel, from raising them in this case." *Petro-Hunt, L.L.C.*, 365 F.3d at 398-99.

Intervenor's arguments regarding issue preclusion miss the point. Texas's petition does not seek a "rematch" of Sierra Club's challenge to EPA's implementation rules decided in the D.C. Circuit. Int. Br. 21 (quoting *B & B Hardware*, 575 U.S. at 147). Instead, Texas raises questions about the legality of EPA's application of the *Sierra Club* ruling to defer action on and ultimately disapprove Texas's timely-submitted SIP revisions notwithstanding Fifth Circuit precedent to the contrary. Texas's intervention and participation in a challenge to EPA's implementation rules does not forever preclude the State from challenging EPA's actions taken pursuant to the statutory regime addressed in that action. Nor does it inherently overrule the applicable caselaw in this Circuit. *In re Bonvillian Marine Serv., Inc.*, 19 F.4th at 792 ("It is a well-settled Fifth Circuit rule of orderliness that one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the

Supreme Court, or our en banc court." (quoting *Jacobs v. Nat'l Drug Intel. Ctr.,* 548 F.3d 375, 378 (5th Cir. 2008)). There is no issue preclusion here.

### III. Vacatur is the proper remedy for the errors raised in Texas's petition for review.

If the Court finds error in EPA's Final Rule, vacatur, not remand, is the proper remedy. Where an agency action is found to be arbitrary and capricious, "[t]he default rule is that vacatur is the appropriate remedy." *Data Mktg. P'ship, LP v. U.S. Dep't of Labor*, 45 F.4th 846, 859 (5th Cir. 2022); *Cargill v. Garland*, 57 F.4th 447, 472 (5th Cir. 2023) (en banc) (plurality op.), *cert. granted*, 144 S. Ct. 374 (2023) ("vacatur of an agency action is the default rule in this Circuit"); *see also United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019) ("The ordinary practice is to vacate unlawful agency action."). Remand without vacatur is only appropriate "when there is at least a serious possibility that the agency will be able to substantiate its decision given an opportunity to do so." *Texas v. United States*, 50 F.4th 498, 529 (5th Cir. 2022) (quoting *Tex. Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n*, 989 F.3d 368, 389-90 (5th Cir. 2021)). Two factors are generally considered when determining whether an agency action should be remanded without vacatur: (1) the seriousness of the deficiencies of the action, that is, how likely the agency will be able to justify its decision on remand; and (2) the disruptive

consequences of the vacatur. *Id.* (quoting *United Steel*, 925 F.3d at 1287). Both factors weigh in favor of vacatur of EPA's Final Rule.

First, the errors raised in Texas's petition cannot be adequately justified by the agency on remand. EPA's post-submittal change in the standard that it applied to disapprove the contingency measure component of Texas's SIP submittal deprived the State of fair notice of the applicable standards. The proper remedy for violations of the fair notice principle is vacatur. *Wages*, 90 F.4th at 381 (agency's violation of fair notice doctrine "warrants vacatur . . . and remand to the agency for a lawful consideration of petitioners' applications").

No amount of additional justification by the EPA for its actions here could remedy the notice issue. Texas timely submitted its contingency measure SIP revisions in advance of the July 2021 attainment date, as contemplated by the Act. C.I. 2-4. By the time EPA first announced its change in statutory interpretation in April 2023, the applicable attainment date had already passed, and the areas had been reclassified. Texas could not have submitted contingency measures that were truly prospective and conditional as articulated by EPA. While EPA may be able to provide greater justification for changing its interpretation of the statutory requirements, it cannot remedy the harm caused by the lack of fair notice and EPA's extensive delay in taking final action on Texas's contingency measure submittal.

Vacatur of the Final Rule would also not lead to disruptive consequences. Texas's contingency measure submittal provided for an additional 3% emissions reductions (or greater) for ozone-precursors in the HGB area DFW areas for the year following the 2020 attainment year. C.I. 2 at 4-12; C.I. 3 at 4-14. These emissions reduction measures—though not SIP approved—were adopted by the State and remained in place notwithstanding EPA's delay in taking final action on TCEQ's SIP submittal. C.I. 2 at PDF 619-20;[10] C.I. 3 at PDF 499-500.[11] In other words, the planned emissions reduction measures were in place upon the areas' designation of 'failure to attain' and continue to be in place today. Vacatur of EPA's Final Rule disproving those measures would not disrupt the current status quo of emissions reductions measures in the HGB and DFW areas. By contrast, if the Court were to remand *without* vacatur, Texas would remain subject to fast-approaching sanctions deadlines, 42 U.S.C. § 7509(a), without any further guidance from EPA about how to comply with the new requirements under the unusual circumstances of this case. C.I. 8 at 67,961 (requiring submittal of prospective and conditional contingency measures but failing to specify the quantity of emissions reductions owed and how

---

[10] The cited pages are unnumbered. This cite refers to the PDF pages of the full document in the Certified Index. The excerpted pages are included in the State of Texas Petitioners' Rule 30.2(a) Appendix at Tab 2, PDF pages 13-14.

[11] The cited pages are unnumbered. This cite refers to the PDF pages of the full document in the Certified Index. The excerpted pages are included in the State of Texas Petitioners' Rule 30.2(a) Appendix at Tab 3, PDF pages 18-19.

quickly the measures must be implemented upon approval). While Texas awaits EPA's further attempts to justify its disapproval on remand, the State could be subjected to significant sanctions that would have disruptive consequences for the State and its industries. *See* Amici Br. 23-27.

None of the factors for remand without vacatur support departure from this Court's default rule that vacatur is the appropriate remedy for unlawful agency action. Accordingly, if the Court finds EPA's Final Rule to be arbitrary, capricious, or otherwise not in accordance with the law, vacatur is the proper remedy.

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request that the Court grant their petition for review and vacate EPA's Final Rule.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

KELLIE E. BILLINGS-RAY
Chief, Environmental Protection Division

*/s/ Erin K. Snody*
ERIN K. SNODY

Assistant Attorney General
State Bar No. 24093056
Erin.Snody@oag.texas.gov

JOHN R. HULME
Assistant Attorney General
State Bar No. 10258400
John.Hulme@oag.texas.gov

Environmental Protection Division
Office of the Attorney General
P.O. Box 12548, MC 066
Austin, Texas 78711-2548
Phone: (512) 475-4019
Fax: (512) 320-0911

**Attorneys for Petitioners State of Texas
and the Texas Commission on
Environmental Quality**

**CERTIFICATE OF SERVICE**

I certify that on May 20, 2024, the foregoing document was served, via the Court's CM/ECF Document Filing System, https://ecf.ca5.uscourts.gov/, upon the following registered CM/ECF users:

Benjamin Grillot
Trial Attorney
United States Department of Justice
150 M. Street
Washington, DC 20002

*Counsel for Respondents, EPA*
*and Michael S. Regan, Administrator of the EPA*


Seth L. Johnson
Molly Prothero
Earthjustice
1001 G Street, NW, Suite 1000
Washington, DC 20001

*Counsel for Intervenor Sierra Club*


*/s/ Erin K. Snody*
Erin K. Snody

**CERTIFICATE OF COMPLIANCE**

With Type-Volume Limitation, Typeface Requirements,
and Type Style Requirements

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,013 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f)

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Windows in the Equity Text A font 14-point type face.

*/s/ Erin K. Snody*
Erin K. Snody

**CERTIFICATE OF ELECTRONIC COMPLIANCE**

I certify that, in the foregoing brief using the Fifth Circuit CM/ECF document filing system, 1) required privacy redactions have been made, 5TH CIR. R. 25.2.13; 2) the electronic submission is an exact copy of the paper document, 5TH CIR. R. 25.2.1; and 3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

*/s/ Erin K. Snody*
Erin K. Snody

Dated: May 20, 2024